## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-CR-10035-JES-JEH |
| | ) | |
| CARRIE A. MUSSELMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AND OPINION</u>

Now before the Court is Defendant Carrie A. Musselman's Motion in Limine (Doc. 24). The Government has filed a Response (Doc. 26), and Defendant has filed a Reply (Doc. 29). For the reasons that follow, the Court DENIES the motion.

## BACKGROUND

Defendant, a chiropractor, is accused of engaging in a scheme to defraud Medicare, a federal healthcare-benefit program, beginning "as early as May 2016 and continuing to at least November 2018." (Doc. 1 ¶ 20.) The indictment alleges that, as part of her fraud scheme, Defendant implemented policies and procedures at Preferred Care Medical Center ("Preferred Care") designed to maximize financial gain. These policies, covering multiple locations and numerous employees, involved "us[ing] improper codes and mischaracteriz[ing] care that was provided in order to receive payment from Medicare for services that would not otherwise been allowed." (*Id.* ¶ 22.)

The alleged healthcare fraud scheme thus involved two key components: The first component is the use of improper billing codes. More specifically, Defendant allegedly misused code L8679, meant for "implantable neurostimulator, pulse generator, any type," for certain non-implantable neurostimulator devices. This was a significant source of revenue for Defendant,

accounting for the majority of her income during the scheme. The second component of the fraud scheme is Defendant's billing for services of mid-level providers, such as physician assistants and nurse practitioners, as though they had been rendered by collaborating physicians. This practice resulted in an automatic 15% payment increase for Defendant.

In 2018, an audit conducted by Medicare contractors revealed discrepancies, and Defendant allegedly made false representations during the audit process, including in an attestation submitted in December 2018. Following the audit, Defendant is alleged to have altered patient files. The scheme ultimately came under investigation by federal agents, culminating in a search warrant executed in October 2021 and subsequently the present charges of healthcare fraud, wire fraud, and obstruction of audit, in violation of 18 U.S.C. §§ 1347, 1343, and 1516.

Defendant is now asking the Court to preclude the Government from offering evidence relating to:

(1)    billing Medicare incorrectly in the 2016-18 period for neurostimulator devices using the billing code L8679 and in violation of Illinois practice policies,

(2)    billing Medicare incorrectly in the 2016-18 period for medically unnecessary allergy treatments using an incorrect billing code,

(3)    altering patient records after the 2016-18 period, and

(4)    being a bad employer.

(Doc. 24 at 2.) Defendant contends that the evidence is inadmissible for the following reasons: (i) the Government's notice of intent to offer the evidence is inadequate under Federal Rule of Evidence 404(b)(3); (ii) the evidence is not admissible for a non-propensity purpose under Rule 404(b)(2); and (iii) the introduction of the evidence at trial would violate Rule 403.

In response, the Government maintains that the challenged evidence is not character or propensity evidence and, as such, is not subject to Rule 404(b) and that, even if this were propensity evidence, it would fall within the permitted exceptions under the rule. The Government also asserts

that the probative value of the evidence outweighs the danger of any purported undue prejudice. In addition, the Government argues that Defendant's Motion in Limine should be rejected outright for failure to specifically identify any evidence, witness, or documentation that should be excluded. The Court considers these arguments in turn.

## LEGAL STANDARD

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The same rule also provides, however, that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

In 2020, Rule 404(b) was amended "principally to impose additional notice requirements on the prosecution." Fed. R. Evid. 404(b) advisory committee's note to 2020 amendments ("The earlier requirement that the prosecution provide notice of only the 'general nature' of the evidence was understood by some courts to permit the government to satisfy the notice obligation without describing the specific act that the evidence would tend to prove, and without explaining the relevance of the evidence for a non-propensity purpose."). The 2020 amendments now require the Government to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B). Courts have generally found that motion-in-limine papers are sufficient to satisfy these notice requirements. *See, e.g.*, *United States v. Roberson*, 581 F. Supp. 3d 65, 70 n.4 (D.D.C. 2022); *United States v. McCoy*, No. 23-CR-0085, 2024 U.S. Dist. LEXIS 94218, at *7 (D. Haw. May 28, 2024); *see also Jones v. Walters*, No. 12-CV-5283, 2016 U.S. Dist. LEXIS 57454, at *12–13 (N.D. Ill. Apr. 29, 2016) (finding motion-in-limine papers sufficient to satisfy similar notice requirements

under Rule 609(b)); *United States v. Rucker*, 738 F.3d 878, 883 (7th Cir. 2013) (finding that

motion-in-limine papers demonstrated that sufficient notice of Rule 609(b) evidence was had).

The United States Court of Appeals for the Seventh Circuit has articulated a general

framework for analyzing evidentiary objections in cases where Rule 404(b) applies:

> First, the proponent of the other acts evidence must show, through a chain of
> propensity-free inferences, that the evidence is relevant for a reason other than
> propensity. Second, the court must determine under Federal Rule of Evidence
> 403 whether the probative value of the evidence is substantially outweighed by
> the prejudicial effect of the evidence on the defendant, paying close attention to
> whether the fact the evidence helps establish is disputed.

*United States v. Thomas*, 986 F.3d 723, 728 (7th Cir. 2021) (citing *United States v. Gomez*, 763

F.3d 845, 863 (7th Cir. 2014)).

But, by its express terms—which pertain only to "other crime, wrong, or act"—Rule 404(b)

"does not apply to direct evidence of the crime charged." *United States v. Ferrell*, 816 F.3d 433,

443 (7th Cir. 2015); *see also United States v. Lane*, 323 F.3d 568, 579 (7th Cir. 2003) ("Rule 404(b)

is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the

crime charged."). As the proponent of the evidence, the Government bears the burden of

establishing that the admissibility requirements are met by a preponderance of the evidence. *See,*

*e.g.*, *United States v. Tatum*, 548 F.3d 584, 587 (7th Cir. 2008); *United States v. Thomas*, 294 F.3d

899, 904 (7th Cir. 2002).

## ANALYSIS

As a preliminary matter, the Court rejects the Government's argument that Defendant's

Motion in Limine is too ambiguous for consideration. As discussed above, the motion highlights

four specific categories of evidence that Defendant argues should be precluded. The Court has had

no problem considering such evidence in the context of this motion and, thus, rejects the

Government's invitation to deny the motion for lack of specificity. The Court notes, however, that

the Government's reliance on Rule 103 seems misplaced. That rule requires a party objecting to the admission of certain evidence to "state[] the specific ground," but said nothing about the specificity of the identity of the evidence itself. And, none of the cases that the Government has cited suggest otherwise.

The Court begins its analysis of Defendant's Motion in Limine with the threshold question: *Is the challenged evidence subject to Rule 404(b),* i.e.*, is it evidence of "other crime, wrong, or act" or direct evidence of the charged offense?*

As noted above, the Indictment charges Defendant with orchestrating a healthcare fraud scheme beginning "as early as May 2016 and continuing to at least November 2018." (Doc. 1 ¶ 20.) That scheme involved two key components: "us[ing] improper codes" and "mischaracteriz[ing] care that was provided." (*Id.* ¶ 22.) Reading the Indictment in its plain language, the Court concludes that the first two categories of evidence being challenged fall squarely within the scope of the offense charged and thus is not subject to Rule 404(b). Again, those categories are: "(1) billing Medicare incorrectly in the 2016-18 period for neurostimulator devices using the billing code L8679 and in violation of Illinois practice policies," and "(2) billing Medicare incorrectly in the 2016-18 period for medically unnecessary allergy treatments using an incorrect billing code." (Doc. 24 at 2.) The evidence directly relates to using improper codes in billing Medicare. Accordingly, Defendant's challenge under Rule 404(b), as well as Rule 403 based on related concerns, carries no water and cannot stand to support exclusion here. The Court denies Defendant's Motion in Limine as to these categories of evidence.

The remaining two categories of evidence—namely "altering patient records after the 2016-18 period" and "being a bad employer"—require more analysis.

As to the evidence of Defendant's "altering patient records after the 2016-18 period," the Government maintains that this is evidence of the "policies and procedures" underlying Defendant's fraud scheme. (Doc. 26 at 9.) The Government explains that "Defendant's altering of patient records is highly probative of her motive, knowledge of the fraud, and her consciousness of guilt." (*Id.* at 12.)

As to the evidence of Defendant's "being a bad employer," the Government asserts again that this is "too ambiguous to fully address," but also adds that, to the extent this evidence relates to "employees leaving Preferred Care because they were uncomfortable with the Defendant's conduct, policies, and procedures," such evidence is within the four corners of the Indictment. (Doc. 26 at 9.) In her reply brief, Defendant does not challenge this reasoning *per se*, but clarifies that she seeks to exclude three witnesses who worked at Preferred Care after the time period alleged in the Indictment, *i.e.*, after November 2018. (Doc. 29 at 9–10.) Defendant argues that any evidence these witnesses can add pertains to conduct that "occurred after the charged offenses" and thus "cannot be considered direct evidence of the charged offenses" and "must be viewed under Rule 404(b)." (*Id.*)

In short, as to both of the categories of evidence, Defendant is asking the Court to preclude all evidence relating to conduct taken after the period referenced in the Indictment. But the law is not as narrow as Defendant would have it. There is no requirement that evidence be within the indictment period to constitute direct evidence of the offense charged. *See, e.g.*, *United States v. Bowling*, 952 F.3d 861, 869 (7th Cir. 2020) ("[C]onduct taken for the purpose of thwarting discovery of the crime or postponing the investigation of the crime *is* part of the charged crime."); *United States v. Holt*, 460 F.3d 934, 937–38 (7th Cir. 2006) ("if the evidence relates to acts 'concerning the chronological unfolding of events that led to an indictment, or other circumstances

surrounding the crime,' it is not evidence of 'other' acts"; instead, "it is part of the story of the very offense for which the defendant is on trial, even if it only does something like completing that story or explaining the circumstances"). In *Bowling*, the court found, for example, that conduct taken "to preserve the appearance of propriety and keep everything copacetic" so as to prevent escalation of government scrutiny is "direct evidence" of fraud. 952 F.3d at 869; *see also United States v. Mankarious*, 151 F.3d 694, 705 (7th Cir. 1998) (related conduct that "maintained normal business operating procedures" also "furthered the fraudulent scheme").

Here, similarly, the Court finds that evidence of altering patient records from early 2019 and evidence from Defendant's employees who worked at Preferred Care in early 2019 is part of the charged fraud scheme. As such, the evidence is not subject to Rule 404(b).

In conclusion, the Court finds that none of the categories of evidence at issue is subject to Rule 404(b) and, thus, need not analyze the rule's application here. The Court notes only that, having found direct connection to allow the evidence, the Court does not foresee admissibility hurdles even under Rule 404(b). The Court can address that issue at trial if it appears that any proffered evidence is beyond the scope of what is direct evidence of the offense charged.

On the current record, the challenged evidence is highly relevant to the ultimate issue in the case: Defendant's policies and procedures underlying a scheme to defraud Medicare. The probative value of the challenged evidence outweighs the potential undue prejudice or any "potential to mislead, confuse, or unduly influence." *See* Fed. R. Evid. 403. To the extent necessary at trial, the Court will consider issuing limiting instructions to avoid any undue prejudice that may result from the introduction of this probative evidence. *See United States v. Carter*, 695 F.3d 690, 700 (7th Cir. 2012) ("Even if the defendants can show prejudice, that alone may not necessarily suffice for them to prevail; limiting instructions will often cure any risk of prejudice.").

## CONCLUSION

The Court hereby DENIES Carrie A. Musselman's Motion in Limine (Doc. 24).


Signed on this <u>28th</u> day of October 2024.

<u>s/ *James E. Shadid*</u> _____
            JAMES E. SHADID
UNITED STATES DISTRICT JUDGE
